## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PAUL V. WILLIAMS, Jr.,

                  Plaintiff,

      v.

KILOLO KIJAKAZI,

                Defendant.

CIVIL ACTION NO. 3:22-CV-01139

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Paul A. Williams, Jr. ("Williams"), brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). The parties consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 8). For the following reasons, the Commissioner's decision shall be **AFFIRMED**.

### I.  BACKGROUND AND PROCEDURAL HISTORY

On April 19, 2017, Williams protectively filed an application under Title II for disability insurance benefits, alleging disability beginning on September 30, 2016.[1] (Doc. 10-9, at 5). Williams' application was initially denied by the Social Security Administration on August 2, 2017, prompting Williams' request for a hearing, which was held before Administrative Law Judge ("ALJ") Jarrod Tranguch on September 27, 2017. (Doc. 10-9, at

---

[1] In correspondence dated October 12, 2020, Williams amended the alleged onset date to April 1, 2017. (Doc. 10-8, at 11).

5). In a written opinion dated December 21, 2018, the ALJ determined that Williams was not disabled and, therefore, not entitled to the benefits sought. (Doc. 10-9, at 2). Williams appealed the decision to the Appeals Counsel, who denied Williams' request for review on December 9, 2019. (Doc. 10-9, at 12).

Thereafter, on January 30, 2020, Williams filed a complaint pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of the ALJ's decision denying his claim for benefits. *Williams v. Saul*, No. 4:20-CV-00152 (M.D. Pa. Jan. 30, 2020), ECF No. 1. On May 27, 2020, the Commissioner filed an unopposed motion to remand for further evaluation of Williams' claims to consider whether Williams was disabled during the 12-month period after he stopped working. *Williams v. Saul*, No. 4:20-CV-00152 (M.D. Pa. May 27, 2020), ECF No. 11. On May 29, 2020, the Court granted the Commissioner's motion and remanded the case for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act. *Williams v. Saul*, No. 4:20-CV-00152 (M.D. Pa. May 29, 2020), ECF No. 12. On September 1, 2020, the Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ for resolution of the following issues:

> The hearing decision does not contain a sufficient evaluation of the claimant's work at step one of the sequential evaluation. The ALJ stated that "there was no continuous 12-month period during which the claimant did not engage in substantial gainful activity (SGA)," and concluded that the claimant was not disabled at step one (Decision, p.4). However, the ALJ did not evaluate disability beginning with the claimant's last day of employment in March 2017. Since the claimant's date last insured is June 30, 2017, this leaves an unadjudicated period of at least three months. Although the ALJ correctly stated that there was no continuous 12-month period without SGA prior to the date last insured, he did not consider whether the claimant's impairments could be expected to meet the durational requirement. Social Security Ruling (SSR) 82-52 provides that if a claimant is not "doing SGA" and can show that he has an impairment that is "expected to result in death or has lasted or can he

- 2 -

expected to last for at least the required 12-month period," the claimant can meet the durational requirement. The claimant is not required to be disabled 12 months prior to expiration of his insured status. It is sufficient if disability begins prior to the date last insured and continues at least 12 months beyond that point.

(Doc. 10-9, at 24).

The Appeals Council directed the ALJ, on remand, to: (1) further consider whether Williams engaged in SGA, including after he stopped work in March 2017; and (2) if finding Williams did not engage in SGA, continue through the sequential evaluation process. (Doc. 10-9, at 25).

On April 6, 2021, a second hearing was held before Administrative Law Judge ("ALJ") Jarred Tranguch. (Doc. 10-8, at 24). In a written opinion dated May 25, 2021, the ALJ determined that Williams was not disabled and, therefore, not entitled to the benefits sought. (Doc. 10-8, at 24). Williams appealed the decision to the Appeals Counsel, who denied Williams' request for review on June 15, 2022. (Doc. 10-8, at 2).

On July 22, 2022, Williams commenced the instant action. (Doc. 1). The Commissioner responded on October 3, 2022, providing the requisite transcripts from Williams' disability proceedings. (Doc. 9; Doc. 10). The parties then filed their respective briefs, with Williams arguing two main bases warrant reversal or remand. (Doc. 11; Doc. 12; Doc. 13).

## II.   STANDARDS OF REVIEW

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200-01 (3d Cir. 2019); 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a). The claimant bears the initial burden of demonstrating a medically

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (effective June 12, 2015, through July 19, 2015).

determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

B. Judicial Review

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. Mar. 28, 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the

Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. Nov. 3, 2003).

The question before the Court, therefore, is not whether Williams is disabled, but whether the Commissioner's finding that Williams is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Williams "was not under a disability, as defined in the Social Security Act, at any time from April 1, 2017, the amended alleged onset date, through June 30, 2017, the date last insured." (Doc. 10-8, at 24). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). At the onset, the ALJ determined that Williams last met the insured status requirements of the Social Security Act on June 30, 2017. (Doc. 10-8, at 13).

### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or

work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. Here, the ALJ determined that Williams "did not engage in substantial gainful activity during the period from his amended alleged onset date of April 1, 2017 through his date last insured of June 30, 2017." (Doc. 10-8, at 13).

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Williams had the following medically determinable severe impairments: traumatic brain injury, migraine headaches, obesity, depression, and anxiety. (Doc. 10-8, at 14). In addition, the ALJ found that Williams had the following medically determinable non-severe impairments: osteoporosis, glaucoma, appendicitis, status-post laparoscopic appendectomy, and post-traumatic epilepsy. (Doc. 10-8, at 14).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version

- 7 -

of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Williams' impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 10-8, at 14). The ALJ considered the following Listings: 11.18 (Traumatic brain injury), 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and Social Security Rulings 19-2p and 19-4p. (Doc. 10-8, at 14-17).

D. <span style="font-variant: small-caps">Residual Functional Capacity</span>

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Williams alleged disability due to migraines, traumatic brain injury, epilepsy, vision problems, balance problems, depression, and anxiety which causes the following

symptoms: constant dizziness, migraine headaches, balance problems, and falls. (Doc. 10-8, at 18). The ALJ found that while Williams' medically determinable impairments could reasonably be expected to cause the alleged symptoms, Williams' statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 10-8, at 18). After weighing and considering the evidence, the ALJ determined that Williams retained the RFC "to perform light work as defined in 20 CFR 404.1567(b)," except that:

> [Williams] can stand and/or walk for up to four hours in an eight-hour workday. [Williams] can occasionally operate pedals or foot controls with the right lower extremity. [Williams] can occasionally balance, stoop, kneel, crouch, use ramps, and climb stairs, but must avoid crawling and climbing on ladders, ropes, or scaffolds. [Williams] can tolerate occasional exposure to extreme cold and heat and vibrations, but must avoid workplace hazards, such as unprotected heights and dangerous moving machinery. [Williams] is limited to moderate noise levels. [Williams] is able to perform jobs that would take no more than thirty days of training to learn, with a specific vocational preparation of level two or less, which are generally classified as unskilled. [Williams] can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision-making and only occasional, gradual changes in the work duties and work setting.

(Doc. 10-8, at 17).

E.  STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R.

§ 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ found that through the date last insured, Williams was unable to perform any past relevant work. (Doc. 10-8, at 22). The ALJ noted that Williams had past relevant work as a a driver, sales route; and a composite position consisting of a customer complaint clerk, bookkeeper, and a driver, sales route. (Doc. 10-8, at 22). Thus, the ALJ proceeded to step five of the sequential analysis.

    F.  S<span style="font-variant:small-caps">TEP</span> F<span style="font-variant:small-caps">IVE</span>

At step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, the ALJ made vocational determinations that Williams was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (Doc. 10-8, at 23). The ALJ also noted that Williams "has at least a high school education" as considered in 20 C.F.R. § 404.1564. (Doc. 10-8, at 23). Considering Williams' age, education, work experience, and RFC, the ALJ determined that "there were jobs that exist in significant numbers in the national economy that [Williams] could have performed." (Doc. 10-8, at 23);

*see* 20 C.F.R. §§ 404.1569; 404.1569(a). In making this determination, the ALJ relied on the expertise of the vocational expert ("VE"), who testified that Williams could perform the requirements of representative light exertion, unskilled occupations such as a survey worker, a storage rental clerk, and an office helper, all with open positions ranging from 75,000 to 412,000 nationally. (Doc. 10-8, at 23). In addition, the VE testified that Williams could perform the requirements of representative sedentary exertion, unskilled occupations such as an order clerk, an addresser, and a lens inserter, all with open positions ranging from 47,000 to 222,000 nationally. (Doc. 10-8, at 23-24). Accordingly, the ALJ determined that Williams was disabled and denied his application for benefits. (Doc. 10-8, at 24).

## IV.   DISCUSSION

On appeal, Williams advances two main bases to argue that the decision of the ALJ is not supported by substantial evidence. (Doc. 11, at 3). First, Williams argues the ALJ failed to properly consider limitations caused by Williams' migraines/headaches. (Doc. 11, at 7). Specifically, Williams asserts: (1) the ALJ erroneously concluded that the evidence does not address the severity of his symptoms or its functional limitations, (2) the ALJ erroneously determined that Botox injections helped with the severity of the headaches; (3) the ALJ failed to further develop the record either through obtaining additional information from treating sources or obtaining a consultative or expert opinion; (4) the ALJ erroneously relied on the opinion of the non-examining state agency medical consultant, James Butcofski, MD ("Dr. Butcofski"), because Dr. Butcofski did not address Williams' migraines; and (5) the ALJ failed to afford proper weight to the medical opinion of treating certified registered nurse practitioner Joshua Braddell ("CRNP Braddell"). (Doc. 11, at 8-13). Second, Williams argues that the ALJ did not sustain the step five burden because he asked the VE an incomplete

hypothetical question and the ALJ erroneously relied on Standard Occupational Classification ("SOC") codes. (Doc. 11, at 13-16). In opposition, the Commissioner maintains that substantial evidence supports the ALJ's decision. (Doc. 12).

A. SUBSTANTIAL EVIDENCE DOES SUPPORTS THE ALJ'S RFC DETERMINATION.

Williams contends that the ALJ failed to properly assess limitations caused by Williams' migraines/headaches including limitations in the ability to stay on task or maintain attendance or limitations in exposure to light. (Doc. 11, at 8-13). In opposition, the Commissioner asserts that the ALJ considered the evidence as a whole and determined that Williams remained capable of performing a limited range of light work with specific limitations to account for Williams' migraine headaches. (Doc. 12, at 13).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "'[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is

- 12 -

deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In making the RFC determination, "the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence.... The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence . . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she

rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis, and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and . . . physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[4] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404,1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship

---

[4] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Here, the ALJ considered Williams' medically determinable limitations in his RFC determination by first summarizing Williams' alleged symptoms:

> [Williams] is alleging disability due to migraines, traumatic brain injury, epilepsy, vision problems, balance problems, depression, and anxiety (C2E, C4E). [Williams] alleges that his impairments affect his ability to work because he experiences nearly constant dizziness, migraine headaches, balance problems, and falls (C6E). [Williams] alleges that his impairments affect his ability to sleep, lift, squat, bend, stand, reach, walk, kneel, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others (C6E). At the hearing, [Williams] testified that he has a driver's license, but that he is no longer able to drive a motor vehicle. [Williams] testified that he experiences headaches approximately every other day. He also testified that he experiences constant eye strain and that he has tried wearing sunglasses and special glasses for fluorescent lights, but neither helped. He further testified that his impairments cause balance issues and that he has used a cane or walker to assist with balance for approximately the last three years. As for his mental impairments, [Williams] testified that he isolates himself and that he has problems with concentration and memory. For example, he testified that his wife has to remind him to perform daily tasks and he often forgets what he is doing, such as whether he washed his hair while taking a shower.

(Doc. 10-8, at 18).

The ALJ determined that while Williams' "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Williams' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 10-8, at 18). Regarding Williams' alleged physical functional limitations, the ALJ noted that "[t]he record reflects a longstanding history of reported headaches; however, the record also reflects improvement in symptoms with Botox injections." (Doc. 10-8, at 19). The ALJ explained, in relevant part:

> [Williams] has a history of traumatic brain injury as a teenager and has residual symptoms and limitations related to that injury. Treatment records reflects complaints of headaches and dizziness. A computed tomography (CT) scan

- 16 -

prior to the relevant period in November 2016 showed left frontal encephalomalacia and left frontal bone sclerotic lesion (C5F/1). An additional CT scan of the head in June 2017 showed stable appearance of dense lesion in L parietal skill, stable posttraumatic and postsurgical changes involving frontal skull and L frontal lobe (C25F/12, 17). A follow-up CTA of the head and neck in June 2020 showed patent neck vasculature and no evidence of intracranial large vessel occlusion (C23F/3-5). An additional CT scan of the head and CT angiogram of the head and neck in July 2020 were unremarkable (C8F/29).

Treatment records from January 2017 describe [Williams]'s headaches as stable, with only one to two headaches per week despite his reluctance to try Botox injections (C4F/5). However, by April 2017, [Williams] reported an increase in headaches causing him to miss work and that Imitrex and Excedrin were not helping (C2F/7). Additionally, in May 2017, [Williams] reported that his headaches were not improved and that he was experiencing near daily persistent headaches (C5F/1). However, he denied any new neurological symptoms at that time (C5F/1). In June 2017, [Williams] reported a worsening of headaches, but he declined Botox injections and additional treatment options were discussed at that time, including acupuncture, reflexology, biofeedback, and mediation (C25F/13). Nevertheless, the evidence of record does not discuss the severity of [Williams]'s headaches or functional limitations when he is experiencing headache symptoms and examination findings do not support the finding that [Williams] is significantly off-task or missing significant amounts of time from work as a result. Treatment records following the date last insured reflect routine Botox injections to treat headache symptoms approximately every three months (C5F/4-6, C8F/10-20, 32, C31F/4, 8). Additionally, the record consistently notes that [Williams] has had excellent results with Botox without any reported side effects (C5F/4-6, C8F/10-20, 32, C15F/27, 29). In July 2020, [Williams] was described as responding "robustly" to Botox (C31F/1).

While treatment records from January 2017 reflect complaints of balance issues worsening over the last two years, a physical examination at that time describes 5/5 strength in the lower extremities, normal gait, normal psychological findings, intact sensation, and the ability to walk on heels, toes, and perform on-leg squat independently without difficulty (C25F/3-4, 7). A neurology examination in May 2017 was positive for right-sided increased muscle tone, right spastic hemiparesis, more prominent reflexes on the right compared to the left, and labile affect, but was otherwise within normal limits (C5F/2). However, subsequent neurology records from June 2017 describes 5/5 strength, normal gait, and normal psychological findings (C25F/12). An annual well visit in December 2017 also describes full range of motion and 5/5 strength in the lower extremities and intact coordination (C15F/28).

(Doc. 10-8, at 19).

- 17 -

As for Williams' subjective statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ determined that they do not support greater limitations, explaining:

> In addition to [Williams]'s limited, routine, and conservative course of treatment, [Williams] has retained the ability to perform a wide range of daily activities, as described in detail herein. Thus, the evidence of record wholly supports the finding that [Williams]'s physical impairments, considered singly and in combination, complicated by obesity, limit him to a reduced range of light exertion work that involves occasional balancing, stooping, kneeling, crouching, use of ramps and stairs, and use of foot controls with the right lower extremity, but must avoid crawling and climbing on ladders, ropes, or scaffolds and avoids workplace hazards. Additionally, the evidence of record reflects that [Williams]'s reported balance issues are adequately accommodated by limiting the claimant to standing and/or walking for up to four hours in an eight-hour workday. [Williams]'s migraine headaches further limit him to moderate noise levels. To prevent exacerbation of symptoms, [Williams] can tolerate only occasional exposure to extreme cold or heat and vibrations. Moreover, the evidence of record wholly supports the finding that [Williams]'s mental impairments are adequately accommodated by limiting him to jobs that take no more than thirty days of training to learn, with a SVP of two or less and are generally classified as unskilled and are considered "low stress" in that they would involve only occasional, simple decision-making and only occasional, gradual changes in work duties and work setting.

(Doc. 10-8, at 21).

Next, the ALJ considered medical opinions and prior administrative medical findings, including the opinions of state agency medical consultant, Dr. Butcofski; State agency psychological consultant, John N. Grutkowski, Ph.D. ("Dr. Grutkowski"); William Chase, Psy.D. ("Dr. Chase"); and CRNP Braddell. (Doc. 10-8, at 21-22). In sum, the ALJ concluded that Williams' "allegations are not entirely consistent with the medical and other evidence because a review of the entire record fails to reasonably support the nature, intensity, frequency, or duration or the limitations alleged by [Williams]." (Doc. 10-8, at 22).

- 18 -

Here, the Court finds that the ALJ accounted for Williams' migraine headaches in its RFC determination. Williams argues that because the RFC determination does not account for the severity of his impairments, including off-task time and light sensitivity, caused by dealing with painful, persistent migraine headaches, the ALJ's decision is defective. (Doc. 11, at 8-9). However, in reviewing the record, the ALJ did review the medical records stating that Williams would experience off-task time, have difficulty concentrating, and/or missing days of work, but the ALJ found the testimony and medical opinion to be unpersuasive. (Doc. 10-8, at 22). Specifically, the ALJ reviewed CRNP Braddell's opinion and found it to be unpersuasive because his "check-the-box" answers to the form does not identify Williams' conditions, address any specific medications or side effects, or explain which findings or symptoms would cause the extreme limitations. (Doc. 10-8, at 22). Further, the ALJ considered, but also found unpersuasive, Dr. Chase's findings that Williams would be "off-task more than thirty-three percent of the day," as unsupported by the objective evidence of record. (Doc. 10-8, at 22). It is clear from a review of the record that the ALJ fully accounted for Williams' migraine headaches, including whether they would cause him off-task time or light sensitivity, when rendering the RFC determination.

Next, the ALJ discussed Williams' treatment, medication, and consultations with different medical professionals. (Doc. 10-8, at 19). Williams argues that while there is evidence the Botox injections did help with the severity of the migraine headaches, there is no evidence that the Botox helped sufficiently such that his limitations would change. (Doc. 11, at 9). Williams alleges that the ALJ failed to point to contrary evidence that Williams is able not disabled despite his testimony that, notwithstanding the Botox treatment, he has little ability to function on days with headaches, including limited activities of daily living, and

there are days when he has to stay in bed. (Doc. 11, at 9). The Court finds that substantial evidence supports the ALJ's RFC determination regarding Williams' treatment. Specifically, as the ALJ discussed, Williams' records reflect that he had a long history of reported headaches after a traumatic brain injury as a teenager, and treatment records from January 1017 describe his migraine headaches as stable with one to two headaches per week despite his reluctance to try Botox injections. (Doc. 10-7, at 113). In April 2017, Williams reported an increase in headaches causing him to miss work and that Imitrex and Excedrin were not helping. (Doc. 10-7, at 20). Treatment records following June 30, 2017, the date last insured, reflect that Williams agreed to begin a routine of Botox injections in July 2017. (Doc. 10-7, at 121; Doc. 10-13, at 19-29, 206, 208). Thereafter, Williams' medical records reflect reports that he had "excellent" results, no reported side effects, and a reduction of the migraine headache frequency and/or intensity for some periods of time from 10/10 to 5/10. (Doc 10-2, at 71-73; Doc. 10-8, at 48; Doc. 10-13, at 30-31, 39, 345). Moreover, as the ALJ discussed, after beginning Botox injections, Williams reported a wide array of daily activities, including multiple trips taken from October 2018 through March 2021, which are not with his allegations of disabling limitations from migraine headaches. (Doc. 10-13, at 180, 193, 242, 257, 261). Additionally, as Williams himself concedes, some of the limitations in the ALJ's RFC determination, including limiting him to only moderate noise levels avoiding heights or machinery, might be related to migraine headaches. (Doc. 8-10, at 17). The inclusion of these RFC limitations further evidence that the ALJ fully accounted for Williams' migraine headaches when making the RFC determination. Taken together, the Court finds that there is substantial evidence to support the ALJ's RFC determination.

To the extent that Williams claims the ALJ should have sent him to a consultative examination because the evidence was insufficient to make a determination, the Court defers to ALJ's discretion to order a consultative examination. *See* 20 C.F.R. § 404.1519a(a). The Commissioner's current regulations state that the Agency "may" recontact a medical source. 20 C.F.R. § 404.1520b(b)(2)(i). However, the regulations further state that "[i]f any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." 20 C.F.R. § 404.1520b(b)(1). The ALJ in this case did exactly what the regulations require.

The Court turns to the opinion of CRNP Braddell completed on March 2, 2021. (doc. 10-13, at 342-43). Without identifying which conditions or limitations that existed on or before April 1, 2017, CRNP Braddell opined that Williams' conditions would cause pain, fatigue, diminish concentration, diminished work pace, and need to rest at work. (Doc. 10-13, at 3420. CRNP Braddell further opined that Williams' conditions would cause him to be off-task for more than 33% of the work day and be absent more than four days per month. (Doc. 10-13, at 342). Finally, CRNP Braddell opined that Williams' condition has not improved since April 1, 2017, and his limitations set forth therein have not gotten any better. (Doc. 10-13, at 343).

In this case, the ALJ's evaluation comported with the new regulatory scheme and was based on substantial evidence. (Doc. 10-8, at 22). "Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching "opinion" evidence in order to fashion a claimant's RFC." *Myers v. Berryhill*, 373 F.Supp.3d 528, 538 (M.D. Pa. 2019). "[T]he ALJ is responsible for making an RFC determination . . . and he is not required to seek a

separate expert medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003); *see Butler v. Colvin*, 3:15-CV-1923, 2016 WL 2756268, at *13 n.6 (M.D. Pa. May 12, 2016) (rejecting the argument that a medical opinion is required to craft an RFC). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). An ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). The ALJ is expressly not required to "seek outside expert assistance." *Chandler*, 667 F.3d at 362 (citing 20 C.F.R. §§ 404.1546(c), 404.1527(d), and SSR 96-5p).

The ALJ determined that CRNP Braddell's opinion is "not persuasive." (Doc. 10-8, at 22). In evaluating the opinion of CRNP Braddell, the ALJ determined its persuasiveness by considering both the consistency and supportability of the opinion, explaining:

> [CRNP] Braddell does not offer any detail or support for the "check-the-box" answers on the form and he does not even identify [Williams]'s conditions or explain which clinical/objective findings or symptoms would cause the rather extreme limitations. While he notes that [Williams]'s medications could produce side effects of fatigue, he does not address any specific medications or specific side effect. Additionally, treatment records from [CRNP] Braddell proceeding the relevant period generally note that [Williams]'s symptoms have been mostly well controlled, that [Williams] was doing well overall per his report, and that [Williams]'s symptoms have been stable overall with no side effects (C2F/18, 30).

(Doc. 10-8, at 22).

Thus, the ALJ's evaluation of the medical opinion of CRNP Braddell comported with the Social Security Regulations. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not required to explain additional factors. To the extent Williams asks the Court to re-weigh the record evidence or make new factual findings, the Court may not invade the ALJ's province as a

finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion would have been reached, but whether substantial evidence supported the ALJ's decision." *See Daub v. Colvin*, No. 3:15-CV-1066, 2015 WL 8013037, at *9 (M.D. Pa Dec. 7, 2015). In addition, to the extent that Williams argues the ALJ erroneously found Dr. Butcofski's opinion to be persuasive, the Court rejects this argument because Dr. Butcofski's opinion does, indeed, indicate "traumatic brain injury" as an impairment and note that he has environmental limitations due to his epilepsy. (Doc. 10-3, at 24-28).

Accordingly, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence.

B. Substantial evidence supports the ALJ's step five determination.

Next, Williams argues that the ALJ makes two errors at step five that warrant reversal or remand. (Doc. 11, at 13). First, Williams asserts that the ALJ uses an incomplete hypothetical question with the VE because it fails to include any limitations to light, staying on task, and/or attendance caused by his migraines. (Doc. 11, at 13-14). Second, Williams argues that the job statistics adopted by the ALJ are insufficient because the VE did not reduce the number of jobs available to account for SOC codes. (Doc. 11, at 14-16; Doc. 13, at 4-5).

In opposition, the Commissioner argues that the RFC accounted for Williams' migraines by limiting his exposure to only moderate noise, and asserts that further limitations to light, difficulty staying on task, and/or maintaining attendance were not warranted because they were not supported by the record. (Doc. 12, at 23). In addition, the Commissioner argues that Williams did not cite to any case where it was error to use the DOT rather than the SOC and did not demonstrate that even a reduction in the identified jobs by using the SOC cods would render the numbers such that the ALJ could no longer rely on them. (Doc. 12, at 25).

The Commissioners maintains that even if Williams had identified evidence favorable to a disability finding, the ALJ's decision is supported by substantial evidence. (Doc. 12, at 25).

At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the VE. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). A hypothetical question posed to the VE "must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala*, 829 F.2d at 1276 (citing *Podedworny*, 745 F.2d at 218; *Wallace v. Secretary,* 722 F.2d 1150 (3d Cir.1983)); *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55. The ALJ, however, is not required to submit to the VE every impairment alleged by a claimant. *Rutherford*, 399 F.3d at 554. "[S]uch references to 'all impairments' encompass only those that are medically established." *Rutherford*, 399 F.3d at 554. Thus, the question posed to the ALJ must accurately convey to the VE all a claimant's credibly established limitations. *Rutherford*, 399 F.3d at 554 (quoting *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999)).

At the administrative hearing, upon hearing Williams' testimony, the ALJ first posited the following hypothetical question to the VE:

> [L]et's assume that we have an individual who is the same age with the same education and with the same work experience as [Williams]. For the first hypothetical, assume that the individual would be limited to jobs that would be at the light exertional level. The individual can stand and/or walk for up to four hours total in an eight-hour workday. The individual can occasionally operate pedals or foot controls with the right, lower extremity. The individual can occasionally balance, stoop, kneel, crouch, use ramps, and climb stairs; must

- 24 -

avoid crawling and climbing of ladders, ropes, or scaffolding. The individual can tolerate occasional exposure to extreme cold or heat and vibrations, but must avoid workplace hazards, such as unprotected heights and dangerous, moving machinery. The individual can tolerate no more than a moderate level of noise, such as would be found in most department or grocery stores. The individual [ ] can perform jobs that would take no more than 30 days of training to learn with a specific vocational preparation level of 2 or less, which are generally classified as unskilled. And the individual could perform jobs that would be considered low stress, in that they would involve only occasional simple decision-making and only occasional, gradual changes in the work duties and work setting. With those limitations, can this individual perform any of [Williams'] past work?

(Doc. 10-8, at 59-60).

The VE testified that an individual with those limitations would not be able to perform Williams' past relevant work, but would be able to perform the following jobs: survey worker (DOT Code 205.367-054 with approximately 189,000 jobs available in the national economy), storage rental clerk (DOT Code 295.367-026 with approximately 412,000 jobs available in the national economy, and office helper (DOT Code 239.567-010 with approximately 75,000 jobs available in the national economy). (Doc. 10-8, at 60).

For the second hypothetical question, the ALJ asked: "[I]f we further limited the individual to jobs that would be at the sedentary exertional level, are there any jobs that you can identify such an individual can perform?" (Doc. 10-8, at 60). The VE testified in the affirmative, providing the following examples: order clerk (DOT Code 209.567-014 with approximately 137,000 jobs available in the national economy), addresser (DOT Code 209.587-010 with approximately 47,000 jobs in the national economy), and lens inserter (DOT Code 713.687-026 with approximately 222,000 jobs available in the national economy. (Doc. 10-8, at 60-61).

For the third, and final, hypothetical question, the ALJ asked:

> [I]n addition to the limitations from the first two hypotheticals, let's assume that we have an individual who would tend to be off task at least 20% of the workday. This individual would need additional unscheduled breaks throughout the workday and would be late to work, absent from work, or would need to leave early from work at least two days per month, on an unscheduled and unplanned basis. Are there any jobs that you can identify that such an individual can perform?

> (Doc. 10-8, at 61).

The VE testified that there would be no work such an individual can perform, even if any one of those three limitations were taken individually or collectively. (Doc. 10-8, at 61).

Applying the above-mentioned standard, the undersigned is not persuaded by Williams' arguments. The ALJ need only include in the hypothetical question to the VE Williams' credibly established impairments that are supported by the record. *See Rutherford,* 399 F.3d at 554; *Ramirez*, 372 F.3d at 552; *Plummer*, 186 F.3d at 431. As discussed above, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. *See Stancavage v. Saul*, 469 F. Supp. 3d 311, 341 (M.D. Pa. 2020). Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, the Court is obliged to affirm this ruling once the Court finds that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986)). Therefore, Williams fails to establish that any additional limitations should have been included.

Finally, Williams argues the ALJ erred in relying on the VE testimony because the VE did not account for the fact that SOC codes are overbroad by reducing the number of jobs

available to more appropriately reflect jobs consistent with Williams' RFC. (Doc. 11, at 14).

Williams concedes that courts in this Circuit have rejected such an argument, but nevertheless

claims that those courts are wrong and urges the Court to take a different approach. (Doc. 11,

at 14) (citing *Vandermark v. Colvin*, No. 3:13-CV-1467, 2015 WL 1097391, at *15 (N.D.N.Y.

Mar. 11, 2015); *Kelly v. Berryhill*, No. 3:17-CV-1703, 2019 WL 1332176 (D. Conn. Mar. 25,

2019); *Hagler v. Astrue*, No. 09-1216, 2010 WL 4025602, at *7 (D. Kan. Oct. 13, 2010)).

Williams argues that the commissioner has not shown that jobs remain in significant numbers

that he can before because the VE testimony cannot constitute substantial evidence

concerning the number of available jobs since "there is nothing indicating that the OES codes

did not include jobs beyond those which [Williams] is capable of performing and the VE did

not testify that she reduced the job statistics to account for this flaw." (Doc. 11, at 16; Doc.

13, at 5).

The regulations specifically provide for an ALJ's reliance on a vocational expert. See

20 C.F.R. § 404.1566(e). The Third Circuit court also recognizes that "[t]he Commissioner

can . . . rely on testimony from a [vocational expert] to meet its step-five evidentiary burden."

*Zirsnak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014). At the administrative hearing, when asked

by Williams' counsel where the VE got the number of jobs, the VE testified that he used the

Dictionary of Occupational Titles and all the related publications. (Doc. 10-8, at 64). The VE

explained that the Occupational Employment Survey ("OES") lists jobs by Standard

Occupational Classification ("SOC") codes and not DOT codes and that SOC codes are

broader and can contain more than one DOT occupation. (Doc. 10-8, at 62-64).

Williams has not persuaded this Court that the ALJ erred in this regard. Numerous

courts in this Circuit have permitted the use of SOC codes by VEs. *See, e.g.*, *Melissa B. v.*

*Comm'r of Soc. Sec.*, No. CV 20-9029, 2021 WL 5578698, at *6 (D.N.J. Nov. 30, 2021) (rejecting argument of claimant's counsel that VE's reliance on SOC codes, which he alleged "inflate the actual number of jobs in the national economy," was erroneous and finding that "[n]umerous courts have permitted the use of SOC codes by VEs" and finding "no convincing reason to rule otherwise here") (collecting cases) (citations omitted); *Martell v. Colvin*, No. CIV. 14-1530, 2015 WL 1310269, at *7 (D.N.J. Mar. 24, 2015) ("Though not specifically listed, this Court finds that the SOC qualifies as reliable job information available from various governmental and other publications.") (quotation omitted). Given the routine reliance on VEs, as recognized in *Zirsnak*, the lack of any persuasive authority in support of Williams' argument, and the VE's testimony that his position is in accord with the Dictionary of Occupational Titles, the undersigned finds no basis for remand. *See Mack v. Saul*, No. CV 19-66, 2020 WL 709515, at *3 (W.D. Pa. Feb. 12, 2020) ("It is not the province of this Court to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC." (quoting *Mariani v. Comm'r of Soc. Sec.*, No. 1:18-CV-14747, 2019 WL 5418092, at *7 (D.N.J. Oct. 23, 2019)).

In short, the undersigned finds that the Commissioner has carried the assigned burden at step five of the sequential evaluation and concludes that substantial evidence supports the ALJ's determination in this regard.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's decision to deny Williams' application for benefits is **AFFIRMED**, final judgment is issued in favor of the Commissioner and against Williams, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: September 12, 2023                       *s/ Karoline Mehalchick*

                                                                    **KAROLINE MEHALCHICK**
                                                                    **Chief United States Magistrate Judge**